UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

In re JOHN A. RYAN et al., Debtors,
_____/   No. 06-cv-06606 MHP

LAWRENCE J. CHAZEN et al.,

                Appellants,

v.

NICKLOS CIOLINO et al.,

                Appellees.
_____/

**MEMORANDUM AND ORDER**
Re: Bankruptcy Appeal

      On October 24, 2006 Lawrence J. Chazen ("Chazen") filed this appeal challenging the bankruptcy court's October 12, 2006 order granting summary judgment to Nicklos and Charles Ciolino, Daniel Delorenzi, Robert Aguilar, and Stephen Daniele ("the Ciolinos") and denying summary adjudication to Chazen. The bankruptcy court ruled that, with respect to the estate of the bankrupt John Ryan ("Ryan"), some of the Ciolinos' judgment liens related back and merged with their pre-judgment attachment liens, and that the Ciolinos' liens therefore take priority over Chazen's liens. Having considered the parties' arguments and submissions, and for the reasons set forth below, the court enters the following memorandum and order.

BACKGROUND[1]

The underlying action was brought by the Ciolinos after they sustained losses from a fraudulent investment scheme undertaken by John Ryan. The Ciolinos entered into oral contracts with Ryan, who promised to make particular stock investments on their behalf. To secure the Ciolinos' confidence Ryan made a number of false representations, including, among other things, that the investments 1) were virtually risk free, 2) were insured by the brokerage firm Bear Stearns, 3) were audited regularly by Bear Stearns, 4) would be repaid promptly, and 5) would, at worst, be repaid plus ten percent interest. Appellants' App. at AA0467–69. Ryan concealed the facts that the investments were neither secure nor insured; that, at worst, the Ciolinos could lose the entirety of their investments; and that Ryan's investment firm was not a sound, reputable corporation. Id. at AA0468–69. The Ciolinos lost both the corpus of their investments as well as their promised returns on those funds.

On April 30, 2002 the Ciolinos brought suit against Ryan in San Mateo County Superior Court, alleging fraud and contract claims, including concealment, negligent misrepresentation, negligence, breach of fiduciary duty, breach of oral contract and unfair business practices. Ryan's primary asset is a $1.6 million house and parcel of land in Redwood City, California ("Ryan's home"). On June 20, 2002 the Ciolinos obtained five pre-judgment writs of attachment on this property for five contract claims totaling $497,000. These writs were recorded on June 21, 2002.

| Ciolino Party | Attachment |
|---|---|
| Charles Ciolino | $ 105,000 |
| Stephen Daniele | $ 105,000 |
| Daniel Delorenzi | $ 105,000 |
| Nicklos Ciolino | $ 122,000 |
| Robert Aguilar | $ 55,000 |
| **Total** | **$ 497,000** |

This original action went to trial on December 1, 2003. On December 31, 2003 a jury awarded the Ciolinos compensatory damages in the amount of $603,000, punitive damages in the amount of $225,000.

| Ciolino Party | Compensatory Damage Award | Punitive Damage Award |
|---|---|---|
| Charles Ciolino | $138,000 | $ 50,000 |
| Stephen Daniele | $130,000 | $ 50,000 |
| Daniel DeLorenzi | $120,000 | $ 25,000 |
| Nicklos Ciolino | $160,000 | $ 50,000 |
| Robert Aguilar | $ 55,000 | $ 25,000 |
| **Total** | **$ 603,000** | **$ 225,000** |

The judge awarded the plaintiffs prejudgment interest and costs in the amounts of $161,017.05 and $27,910.05 respectively, on the basis of both fraud and contract claims.

| Ciolino Party | Pre-Judgment Interest | Costs Award |
|---|---|---|
| Charles Ciolino | $ 32,702.19 | $ 5,677.71 |
| Stephen Daniele | $ 27,431.23 | $ 5,574.21 |
| Daniel DeLorenzi | $ 31,144.11 | $ 5,483.21 |
| Nicklos Ciolino | $ 53,686.78 | $ 5,617.71 |
| Robert Aguilar | $ 16,052.74 | $ 5,557.21 |
| **Total** | **$ 161,017.05** | **$ 27,910.05** |

The sum of the awards to the Ciolinos was thus $1,016,927.10. Following this original judgment, the Ciolinos secured abstracts of judgment on Ryan's house. Ryan appealed the judgment against him and the California Court of Appeal affirmed.

On June 25, 2002, four days after the Ciolinos' writs of attachment were recorded, Chazen recorded a deed of trust on Ryan's home in the amount of $964,000. The Ciolinos characterize Chazen as Ryan's friend and co-conspirator in the fraudulent investment scheme. On January 5, 2004 Ryan's friends and family members, including Craig and Patricia Judy, Lawrence and Kathy

1  Cavallini and Jean Ryan, recorded a second deed of trust on Ryan's home in the amount of
2  $750,000. On January 28, 2005 the Ciolinos, believing the two deeds to be fraudulent transfers
3  meant to drain Ryan's home of equity, again filed suit in San Mateo County Superior Court seeking
4  the annulment of the allegedly fraudulent deeds.[2]
5        On September 7, 2005 Ryan and his wife Danielle filed for Chapter 11 bankruptcy in the
6  United States Bankruptcy Court for the Northern District of California. On October 20, 2005 the
7  Ryans initiated an adversary proceeding against all creditors holding liens on the Redwood City
8  property, including Chazen and the Ciolinos. In the adversary proceeding, the Ryans sought a
9  determination of the priority of the various liens on the property.[3] Chazen answered and filed a
10 cross-claim against the Ciolinos seeking a determination that his deed was senior to their liens
11 and/or that the Ciolinos' liens were void or expired. Chazen subsequently moved for summary
12 adjudication on these issues.
13       In Chazen's motion for summary adjudication, he argued that he was entitled to summary
14 adjudication because the Ciolinos had obtained prejudgment attachment liens based on claims for
15 breach of contract. Appellants' App. at AA0153. While Chazen acknowledged that the Ciolinos
16 sought and obtained judgments for tort claims involving fraud and misrepresentation as well as for
17 contract claims involving breach of oral contract, Chazen nonetheless argued that the jury awarded
18 the Ciolinos damages for their tort claims exclusively and awarded the Ciolinos no damages for their
19 contract claims. Id. As a result, Chazen contended that the Ciolinos' judgments do not relate back
20 to their attachment liens and that since the attachment liens were not renewed they have therefore
21 expired. Id.
22       The bankruptcy court denied Chazen's motion, and the parties agreed that this ruling
23 amounted to a finding that the Ciolinos' liens were senior to Chazen's deed. On October 12, 2006
24 the court granted summary judgment to the Ciolinos. The court ruled that "to the extent that the
25 Ciolino parties' judgments arise from their breach of contract claims, their judgment liens arise from
26 the same claims as the attachment liens and therefore relate back to and merge with those attachment
27 liens." The court determined that $563,000 of the Ciolinos' $603,000 total compensatory damage
28 award; no punitive damages; $77,794.52 in pre-judgment interest; and 10 percent per annum in

4

simple interest arose from the Ciolinos' contract claims and therefore related back to and merged with the attachment liens. A comparison of the prejudgment attachments liens secured by each plaintiff with the amount of compensatory damages found to relate back to the liens is presented below.

| Ciolino Party | Attachment | Compensatory Damage Award | Amount of Award Determined to Relate Back |
|---|---|---|---|
| Charles Ciolino | $ 105,000 | $ 138,000 | $ 138,000 |
| Stephen Daniele | $ 105,000 | $ 130,000 | $ 138,000 |
| Daniel Delorenzi | $ 105,000 | $ 120,000 | $ 120,000 |
| Nicklos Ciolino | $ 122,000 | $ 160,000 | $120,000 |
| Robert Aguilar | $ 55,000 | $ 55,000 | $ 55,000 |
| **Total** | **$ 497,000** | **$ 603,000** | **$ 563,000** |

The bankruptcy court determined the amount of prejudgment interest that relates back to the liens based on the original investment of each of the Ciolino parties. The break-down of the amount of prejudgment interest that would relate back is as follows:

| Ciolino Party | Pre-judgment interest |
|---|---|
| Charles Ciolino | $ 17,287.67 |
| Stephen Daniele | $ 17,287.67 |
| Daniel Delorenzi | $ 17,287.67 |
| Nicklos Ciolino | $ 17,287.67 |
| Robert Aguilar | $  8,643.84 |
| **Total** | **$ 77,794.52** |

Therefore, court computed the total amount of the judgement liens that relate back to the attachment liens based on the sum of the relevant portion of the prejudgment interest and the compensatory damage award.

| Ciolino Party | Damages that Relate Back | Prejudgment Interest | Total |
|---|---|---|---|
| Charles Ciolino | $ 138,000.00 | $ 17,287.67 | $ 155,287.67 |
| Stephen Daniele | $ 138,000.00 | $ 17,287.67 | $ 147,287.67 |
| Daniel Delorenzi | $ 120,000.00 | $ 17,287.67 | $ 137,287.67 |
| Nicklos Ciolino | $120,000.00 | $ 17,287.67 | $ 137,287.67 |
| Robert Aguilar | $ 55,000.00 | $  8,643.84 | $ 63,643.84 |
| **Total** | **$ 563,000.00** | **$ 77,794.52** | **$ 640,794.52** |

As a result, the court found the Ciolinos' liens, in the amount of $640,794.52, to be of higher priority than Chazen's deed.

In the present appeal, Chazen raises two primary issues. First, Chazen argues that the Ciolinos' judgment liens cannot relate back to the attachment liens. This argument has two prongs. In the first prong Chazen argues that the bankruptcy court erred by allowing the judgment liens to relate back even though the Ciolinos elected a remedy for tort claims instead of contract claims. In the second prong Chazen argues that the bankruptcy court erred by allowing the judgment liens to relate back even though the attachment liens never merged with judgment liens on the same claim

from which they arose, were not renewed, and therefore expired. Chazen's second primary argument is that even if the liens do relate back, they cannot do so in any amount greater than $497,000, their original amount. With respect to this issue, Chazen argues the bankruptcy court erred by permitting more than $497,000 to relate back because an attachment lien must be for a fixed sum.

LEGAL STANDARD

This court has jurisdiction to hear appeals from the final judgments of the United States Bankruptcy Court for the Northern District of California per 28 U.S.C. section 158(c)(1). The district court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. See Havelock v. Taxel (In re Pace), 67 F.3d 187, 191 (9th Cir. 1995). A factual finding is clearly erroneous if the appellate court, after reviewing the record, has a definite conviction that a mistake has been made. Beauchamp v. Hoose (In re Beauchamp), 236 B.R. 727, 729 (B.A.P. 9th Cir. 1999). Findings of fact based on credibility are given particular deference by reviewing courts. Id. at 730. Mixed questions of fact and law are reviewed de novo. Id.

DISCUSSION

Chazen argues that the Ciolinos' June 21, 2002 attachment liens cannot take priority over Chazen's June 25, 2002 deed of trust. In order for Chazen's later deed to take priority over the Ciolinos' earlier liens, the Ciolinos' March 2004 judgment liens must not relate back to their June 21, 2002 attachment liens. Chazen therefore argues that the bankruptcy court erred in ruling that the Ciolinos' liens do relate back. Chazen presents several arguments designed to defeat relation back, all of which relate to the nature of the Ciolinos' claims and/or remedies: (1) that the Ciolinos elected to recover a tort remedy in lieu of a contract remedy, (2) that the Ciolinos recovered on a different type of claim than the type upon which their attachment liens were based, thereby violating California's attachment statute, (3) that the judgment liens failed to merge with the attachment liens, and (4) even if the court disagrees with Chazen on issues (1) through (3), that the Ciolinos cannot

1  recover any amount greater than the sum of the original amount of their attachment liens because
2  attachment liens must be for a fixed or readily ascertainable amount.
3        Each of Chazen's arguments depends on this court's review of the bankruptcy court's
4  determination that the jury awarded $563,000 in damages for the Ciolinos' breach of contract
5  claims. The parties dispute whether this is a mixed question of fact and law or an issue of fact.
6  After resolving this threshold matter, the court will address Chazen's arguments in turn.
7
8        I.      Standard of Review
9        Chazen argues that the bankruptcy court erred by ruling (1) that the Ciolinos' judgment liens
10 relate back and (2) that any amount greater than $497,000, the amount of the attachment liens,
11 should relate back. Chazen submits that these rulings are mixed questions of law and fact which are
12 reviewed de novo. The Ciolinos agree that some of the bankruptcy court's rulings are entitled to de
13 novo review. But they contend that the bankruptcy court made two factual findings that must be
14 reviewed for clear error—that the judgment liens were partially based on breach of contract claims
15 and that $563,000 of the jury's compensatory damages award was based on those same claims.
16       The bankruptcy court's order reveals that that court evaluated whether the Ciolinos'
17 judgment for compensatory damages, punitive damages, and various types of interest should relate
18 back, and if so, in what amount. This consideration necessarily involved an initial determination as
19 to whether the jury awarded damages based on contract, tort, or both types of claims. That court
20 does not, however, explain with any specificity how it reached its conclusion as to each item of
21 damages. See Appellants' App. at AA0604 (stating that compensatory damages arise from contract
22 claims and therefore relate back); id. at AA0605 (stating that punitive damages do not arise from
23 contract claims and therefore do not relate back); id. at AA0605–08 (stating that pre-judgment
24 interest arises in part from tort claims and in part from contract claims and therefore simple interest
25 and pre-judgment interest relate back while compound interest does not).
26       The types of questions considered factual findings subject to the clear error standard or the
27 abuse of discretion standard are typically limited to those involving some type of credibility
28 determination. A variety of decisions based on analysis of what parties did or intended to do are

considered questions of fact. See, e.g., In re Candland, 21 F.3d 323, 327 (9th Cir. 1994) (whether creditor relied on false statements is a question of fact); In re Lawson, 122 F.3d 1237, 1240 (9th Cir. 1997) (whether debtor intended to hinder, delay, or defraud creditors is a question of fact); In re Leavitt, 171 F.3d 1219, 1222–23 (9th Cir. 1999) (court's finding of bad faith is reviewed for clear error). The Ciolinos contend that the questions regarding the nature of the judgment liens and the nature of the jury's compensatory damages award present similar factual questions. The court does not agree. The case presented here primarily involves a statutory interpretation of California Code of Civil Procedure section 483.010(a) and 697.020(a), and a reexamination of the bankruptcy court's interpretations of those sections. These issues present questions of law subject to de novo review.

II.     The Nature of the Ciolinos' Claims

This court agrees with the bankruptcy court's determination that the Ciolinos' judgment liens were partially based on breach of contract claims. The bankruptcy court, in evaluating the basis for the Ciolinos' state court awards, considered various aspects of the trial court record.

In its evalution of the Ciolinos' recovery of compensatory damages, the bankruptcy court considered the jury's general verdict forms. Appellants' App. at AA0604-05. These forms, dated December 31, 2003, indicate that the jury found in favor of Nicklos Ciolino, Charles Ciolino, Robert Aguilar and Daniel Delorenzi on counts of fraud, negligent misrepresentation, breach of fiduciary duty, breach of oral contract and unfair business practices. Id. at AA0269–79. The jury further found in favor of Stephen Daniele on counts of fraud, negligence, breach of fiduciary duty, and breach of oral contract. Id. On these counts, the jury awarded compensatory damages as follows: (1) for Nicklos Ciolino, $120,000; (2) for Charles Ciolino, $138,000; (3) for Stephen Daniele, $130,000; (4) for Robert Aguilar, $55,000; and (5) for Daniel Delorenzi, $120,000. Id. The forms provide only the most rudimentary breakdown of damages, stating: "Complete the section below only if you find in favor of [each plaintiff's name appears here] on the following causes of action: (1) Fraud, (2) Negligent Misrepresentation, (3) Negligence, (4) Breach of Fiduciary Duty, (5) Unfair Business Practices." Id. On Stephen Daniele's form, the jury crossed out causes of action (2) and (5)—negligent misrepresentation and unfair business practices. The jury's markings correspond to

9

those causes of action on which it found for defendant Ryan and against plaintiff Stephen Daniele. On each of the other plaintiffs' general verdict forms, the jury crossed out none of the causes of action, which corresponds to their decision to find in favor of the plaintiffs on all counts listed on the form. Id.

In the section immediately below, the form states: "We award [each plaintiff's name] the following damages: (1) Compensatory Damages: [each plaintiff's award is written here], (2) Emotional Distress: 0." Appellants' App. at AA0269–79. The forms then ask the jurors, in the alternative, "If your award if [sic] for breach of oral contract only, then complete the section below." On each form the jury wrote "N/A." Id. The forms therefore reflect that the jury found against Ryan, and in favor of each individual Ciolino plaintiff on both contract and tort causes of action, and futhermore, that the jury awarded the Ciolinos compensatory damages totaling $563,000 for both types of claims. While there appears to be no meaningful way to parse the jury's award in terms of how much it intended to compensate the Ciolinos for their contract damages, as opposed to their tort damages, it would have been reasonable for the jury to award compensatory damages based on contract claims in excess of $450,000, the sum of the Ciolinos' original investments. See id. at AA0224–35 (transcript of closing arguments at trial in which the Ciolinos recount their original investments); see also id. at AA0077–91 (right to attach orders and orders for issuance of writ of attachment after hearing, documenting attachments totaling $497,000).

In its evalution of the Ciolinos' recovery of pre-judgment interest, the bankruptcy court considered the Ciolinos' memorandum of points and authorities as well as the trial court's order awarding the requested interest. Id. at AA0605. The trial court awarded prejudgment interest based on the Ciolinos' total $497,000 compensatory damages, which the bankruptcy court reduced so as to reflect interest based only on the Ciolinos' original $450,000 investments. In its evaluation of the Ciolinos' recovery of post-judgment (simple) interest, the court noted that the trial court, exercising its discretion, awarded the same rate of post-judgment interest on both contract and tort claims. Id. at AA0606. The bankruptcy court provided, in its opinion, a table demonstrating its calculation of pre-judgment interest it deemed to arise from the Ciolinos' contract claims. Id. at AA0607. This

1  table reflects that interest was calculated from the sum of each Ciolino party's initial contractual
2  investment with Ryan.  Id.
3
4
5       It is well documented that the Ciolinos recovered on both types of claims.  See, e.g.,
6  Appellants' App. at AA0032–42 (jury's general verdict forms indicating jury finding in favor of
7  Ciolinos on both tort and breach of contract claims); id. at AA0685 (California Court of Appeal
8  noting that judgment was based on both tort and breach of contract claims).  The mere inclusion of
9  punitive tort damages in the jury's award does not mean that the jury awarded, or that the plaintiff
10 elected, only a tort remedy when the plaintiff successfully prosecuted both tort and contract-based
11 claims.  This court declines to invoke judicial estoppel because Chazen has failed to show how the
12 Ciolinos gained any unfair advantage or, more fundamentally, how their positions were in any way
13 inconsistent given that they had both types of valid claims.  Therefore, the bankruptcy court did not
14 err in finding that the Ciolinos' March 2004 judgment liens related back to their June 21, 2002
15 attachment liens.
16
17      II.     Election of Remedies
18      Chazen contends that the bankruptcy court erred by allowing the judgment liens to relate
19 back even though the Ciolinos elected a remedy for tort claims instead of contract claims.  This
20 contention is fundamentally flawed.  The election of remedies doctrine is triggered "whenever a
21 party, who is entitled to enforce *two inconsistent remedies*, either institutes an action on one of such
22 remedies or performs an act in pursuit of such remedy whereby he or she gains any advantage over
23 the other party, or causes the other party any damages."  28 Cal. Jur. 3d, Election of Remedies § 11
24 (2006) (emphasis added).  The doctrine "has been repeatedly criticized and seems to be falling into
25 disfavor."  3 Witkin Cal. Procedure § 175 (4th ed. 2003).  It has also been characterized as "a harsh,
26 and now largely obsolete rule, the scope of which should not be extended."  Id. (citing Perkins v.
27 Benguet Consol. Mining Co., 55 Cal. App. 2d 720, 756 (1942) and quoting Friederichsen v. Renard,
28 247 U.S. 207, 213 (1918)).  It has been particularly singled out as being disfavored with respect to

1  attachments. 3 Witkin Cal. Procedure § 182 ("The doctrine of election of remedies now has little or
2  no application in the context of attachments").

3  Chazen suggests that the Ciolinos were free to pursue both tort and contract claims against
4  Ryan but that they were not free to both receive punitive damages and retain the place-holding
5  benefit flowing from their contract claims. Appellants' Opening Br. at 18. Chazen's argument fails
6  because it rests on the mistaken premise that the Ciolinos had available two inconsistent remedies
7  arising from the same set of operative facts. Election of remedies applies when a plaintiff chooses
8  "one of two or more coexisting remedial rights, where several such rights *arise out of the same*
9  *facts*." 3 Witkin, Cal. Procedure § 174 (emphasis added). It is the existence of inconsistent
10 remedies stemming from only one cause of action—one set of operative facts—that justifies the
11 election of remedies doctrine. When a plaintiff has two causes of action against a defendant arising
12 from two distinct sets of operative facts—as the Ciolinos had against Chazen—the election of
13 remedies doctrine is not applicable because each successful cause of action entitles the plaintiff to its
14 own remedy.

15 Chazen additionally argues that upon winning on the merits of both their contract and tort
16 claims, the Ciolinos elected to treat their compensatory damages award as an award for tort claims in
17 order to recover punitive damages. None of the cases Chazen cites supports the contention that the
18 Ciolinos are not permitted to recover separate remedies for their separate causes of action. Smith v.
19 Golden Eagle Casinos, 69 Cal. App. 4th 1371 (1999), while somewhat unclear on this point, is
20 inapplicable here because it involved alternative theories of recovery, not independent ones. Cates
21 Construction, Inc. v. Talbot Partners, 21 Cal. 4th 28, 61 (1999), does not apply because that case
22 involves "the absence of an independent tort" whereas the Ciolinos had both independent tort and
23 contract claims against Chazen. Likewise, Foley v. Interactive Data Corp., 47 Cal.3d 654 (1988),
24 involves the unavailability of tort damages to contract claims, whereas the Ciolinos received tort
25 damages for tort claims and contract damages for contract claims.

26 Chazen's argument that the Ciolinos' judgments were exclusively fraud judgments because
27 the Ciolinos characterized them as fraud judgments is irrelevant in light of the fact that the Ciolinos
28 had valid claims of both types. It was not inconsistent for the Ciolinos to argue that their judgment

had characteristics of both tort and contract claims because their judgment was on both types of claims. As to the Ciolinos' successfully arguing that the judgments were non-dischargeable, Chazen asks this court to refuse to give the Ciolinos "the simultaneous benefit of two mutually exclusive laws: the federal non-dischargeability statute, which applies to debts arising out of . . . intentional tort, and the state attachment-lien statute, which applies only to debts arising out of contract." Appellants' Opening Brief at 16. Chazen cites no authority, binding or otherwise, to support his characterization that these two laws are mutually exclusive, especially in the context of a hybrid award for tort and contract claims.

### III.  Relation Back Under California Code of Civil Procedure 697.020(a)

Chazen also asserts that the bankruptcy court erred because only a judgment lien for the same claim can relate back to a prior attachment lien, and the bankruptcy court permitted the Ciolinos' recovery on a tort claim to relate back to their contract-based attachment lien. To this end Chazen cites California Code of Civil Procedure section 697.020(a) and its interpretive case law. Chazen's assertion yet again depends on a finding that the Ciolinos' underlying judgment was exclusively for their tort claims. There is no dispute that section 697.020(a) would prohibit the relation back of a judgment lien based on a tort claim to a prior attachment lien based on a contract claim. But that is not the case here. As a result, Bank of America v. Hill, 9 Cal. 2d 495 (1937), is inapposite. Plaintiff's complaint in Hill alleged three causes of action, the second and third of which were conversion of personal property and an action to recover indebtedness for that same property. These were mutually exclusive remedies which arose from a single wrong. The Ciolinos, however, had independent claims for fraudulent inducement into a contract and subsequent breach of contract. These claims arose from different sets of operative facts. Therefore section 697.020(a) and the Hill framework do not preclude the relation back of the Ciolinos' judgment liens.

### IV.  Merger

Because the Ciolinos' judgment liens related back to their prior attachment liens, there was no need for the Ciolinos to file for the attachment liens' renewal. The Ciolinos timely filed abstracts

of their judgments on March 17, 2004. Appellants' App. at AA688–703; see also 3 Miller & Starr, California Real Estate § 32:48 ("A judgment lien on real property is created by recording an abstract of the judgment"). At that time, the Ciolinos' prior attachment liens merged with their judgment liens. See Durkin v. Durkin, 133 Cal. App. 2d 283, 294 (1955) ("This is consistent with the traditional concept that the lien of an attachment is merged in the lien of the judgment in the case of real property or with the lien of a writ of execution in the case of personal property").

### V.     Fixed or Ascertainable Amount

Chazen argues that the bankruptcy court erred in ruling that the Ciolinos' March 2004 judgment liens related back to their June 21, 2002 attachment liens. To support this contention Chazen relies on California Code of Civil Procedure section 483.010(a), which requires that attachments be issued only for claims "based upon a contract" where the sum is "a fixed or readily ascertainable amount." Chazen claims that Lenard v. Edmonds, 151 Cal. App. 2d 764 (1957), stands for the proposition that even in cases like that of the Ciolinos, in which the plaintiff alleges both contract and tort claims, section 483.010(a) precludes relation back. But this is only true if, as was the case in Lenard, the plaintiffs are relying on a tort cause of action to achieve relation back. The Ciolinos did not argue, and the bankruptcy court did not rule, that their tort cause of action should relate back.

Chazen argues persuasively that no amount greater than the original amount of the attachment liens could relate back for each of the Ciolino parties. California Code of Civil Procedure section 16.10 notes that "[t]he amount secured by an attachment generally equals the amount of the debt claimed by the plaintiff, plus costs and attorneys fees. . . ." Attachment is a remedy designed to protect plaintiffs in a pending trial, but it is a "harsh remedy at best in that an alleged debtor loses control of his property before the claim against him has been adjudicated." Barceloux v. Dow, 174 Cal.App.2d 170, 174 (1959). Accordingly, the purpose of the "fixed and ascertainable amount" requirement is to avoid unnecessarily penalizing the alleged debtor. See id. at 173 (describing similar purpose of language in predecessor statute). This requirement embodies a notice principle: a defendant in a pending trial and any other creditors are given notice of the

maximum amount of property so affected. Permitting the Ciolinos to claim an amount greater than that of the attachment liens would subvert this purpose.

In the instant action, the bankruptcy court determined that an amount greater than the amount of the attachments related back to the attachments for each of the Ciolino parties, except for Robert Aguilar. The comparison of the attachments and the bankruptcy court's determination of the amount which relates back to each attachment is reproduced below.

| Ciolino Party | Attachment | Amount of Award Determined to Relate Back by Bankruptcy Court |
|---|---|---|
| Charles Ciolino | $ 105,000 | $ 138,000 |
| Stephen Daniele | $ 105,000 | $ 130,000 |
| Daniel Delorenzi | $ 105,000 | $ 120,000 |
| Nicklos Ciolino | $ 122,000 | $ 120,000 |
| Robert Aguilar | $ 55,000 | $ 55,000 |
| **Total** | **$ 497,000** | **$ 533,000** |

Thus, the court concludes the amount of the award which relates back for each of the Ciolinos is limited to the amount of the individual party's attachment. For Charles Ciolino, Stephen Daniele, Delorenzi, the amount is limited to $105,000 each; Nicklos Ciolino to $122,000 and Robert Aguilar to $55,000.

However, in order to make the determination that a certain amount of the damage award related back to the attachment liens, the bankruptcy court had to determine what portion of the compensatory damages was awarded for the contract claims and what portion was awarded for the tort claims. A comparison of the total amount of compensatory damages awarded to each of the Ciolino's with the amount determined to be based on contract claims follows:

15

| Ciolino Party | Compensatory Damage Awarded by Jury | Amount of Award Determined to Relate Back |
|---|---|---|
| Charles Ciolino | $ 138,000 | $ 138,000 |
| Stephen Daniele | $ 130,000 | $ 138,000 |
| Daniel Delorenzi | $ 120,000 | $ 120,000 |
| Nicklos Ciolino | $ 160,000 | $120,000 |
| Robert Aguilar | $ 55,000 | $ 55,000 |
| **Total** | **$603,000** | **$ 563,000** |

In reaching this allocation, the bankruptcy court concluded that, for three of the Ciolinos—Charles Ciolino, Delorenzi, and Aguilar, the jury awarded no damages for the fraud claims. For these three parties, the bankruptcy court determined that the amount that related back was the entirety of the compensatory award. On the other hand, the bankruptcy court determined, in the case of another of the Ciolino parties, Daniele, that an amount greater than the entire compensatory damage award related back to the pre-judgment attachment. Each of these parties also received punitive damages, which cannot be based on contract claims. Therefore, the finding that the entirety of the damages award, or a greater amount, related back to the attachment liens would mean that the jury granted no damages on the causes of action sounding in tort. This conclusion contradicts the jury's findings on each of the verdict forms for these parties. See, e.g., General Verdict Form for Plaintiff Charles Ciolino at AA 0035–36 (finding in favor of Charles Ciolino on claims for fraud including concealment; negligent misrepresentation; negligence; breach of fiduciary duty; breach of oral contract; unfair business practices); General Verdict Form for Plaintiff Stephen Daniele at AA 0041–42 (finding in favor of Stephen Daniele on causes of action for fraud; negligence; breach of fiduciary duty; breach of oral contract).

In the absence of evidence of the jury's allocation, the better method for allocating damages between the tort and contract causes of action is to refer to the Ciolino's complaints in the underlying suit. The bankruptcy court employed a similar method with respect to the final Ciolino party, Nicklos Ciolino. The bankruptcy court determined that $120,000 of the $160,000

16

compensatory damage award did relate back to Nicklos Ciolino's pre-judgment attachment. It reached this conclusion by reference to the amount of contract claims alleged in Nicklos Ciolino's complaint. See Appellants' App. at 0604–0605. An examination of the complaints filed by the individual Ciolino parties in the underlying case reveals that those parties alleged the following amount of contract damages.

| Ciolino Party | Damages Alleged in Complaint for Breach of Oral Contract |
|---|---|
| Charles Ciolino | $ 100,000 |
| Stephen Daniele | $ 100,000 |
| Daniel Delorenzi | $ 100,000 |
| Nicklos Ciolino | $ 122,000 |
| Robert Aguilar | $ 50,000 |
| **Total** | **$ 472,000** |

See Complaints at AA 0477 (Nicklos Ciolino); AA 0491 (Charles Ciolino); AA 0505 (Daniel Delorenzi); AA0518 (Robert Aguilar); AA 0531 (Stephen Daniele). The court finds that the jury award for contract damages is limited to the amount alleged in the complaint for each of the Ciolinos. Because none of these amounts exceeds the amount of the attachments, the court finds that the amounts alleged in the complaints for breach of oral contract relate back to the attachments. Therefore, a total of $472,000 of the damages award relate back to the attachments.

      Chazen also objects that the inclusion of pre- and post-judgment interest in the bankruptcy court's calculation of damages is unwarranted in light of section 483.010(a)'s requirement that attachment liens be made in a "fixed or readily ascertainable amount." Neither section 483.010(a), nor sections 483.015 or 482.110 speaks directly to whether pre- or post-judgment interest is allowed. But in light of the statutory command that the total "amount of the defendant's indebtedness" is repaid, and in the absence of any statutory or case law to the contrary, it is proper to include a

measure of pre- and post-judgment interest in the calculation of a defendant's indebtedness to a plaintiff. Cal. Code Civ. Pro. § 483.015(a)(1).

This court reverses the bankruptcy court's determination that $563,000 of the jury's compensatory damages award was based on breach of contract claims. The following table presents the total amount of the Ciolino's claims that relate back to the pre-judgment attachment liens.

| Ciolino Party | Damages that Relate Back | Prejudgment Interest | Total |
|---|---|---|---|
| Charles Ciolino | $ 100,000.00 | $ 17,287.67 | $ 117,287.67 |
| Stephen Daniele | $ 100,000.00 | $ 17,287.67 | $ 117,287.67 |
| Daniel Delorenzi | $ 100,000.00 | $ 17,287.67 | $ 117,287.67 |
| Nicklos Ciolino | $ 122,000.00 | $ 17,287.67 | $ 139,287.67 |
| Robert Aguilar | $ 50,000 | $ 8,643.84 | $ 58,643.84 |
| **Total** | **$ 472,000** | **$ 77,794.52** | **$ 549,794.52** |

However, this conclusion does not disturb the bankruptcy court's finding that the Ciolinos' liens were senior to Chazen's deed.

CONCLUSION

For the reasons stated above, Chazen's appeal is GRANTED IN PART and DENIED IN PART. The bankruptcy court's order is REVERSED IN PART and AFFIRMED IN PART.

IT IS SO ORDERED.


Dated: May 11, 2007

_____
MARILYN HALL PATEL
United States District Court Judge
Northern District of California

## ENDNOTES

1. Unless otherwise indicated, all facts in this section are taken from the parties' opening briefs.

2. Information about the outcome of this proceeding is not provided to this court by the parties but appears to be irrelevant for the resolution of the validity of the Ciolinos' liens.

3. It is undisputed that a first-priority deed of trust on Ryan's home is held by World Savings in the amount of $566,370.